## CLARK et al. v. KEITH.

No. 13134—Opinion Filed Sept. 23, 1924.

**1. Adverse Possession—Proof.**

Where wild, unbroken, unfenced land "lying out" is conveyed by I. to T., and T. directs I. and her agents to cease cutting timber therefrom, and the timber cutting operations thereupon cease, such acts on the part of the grantee are sufficient to support a finding that T. was in the actual possession of said land.

**2. Limitation of Actions—Effect of Statehood—Ejectment—Adverse Possession.**

Where the record shows that adverse possession was never asserted until after the territory was erected into a state, the statutes of limitations adopted by the state govern the rights of the owner of the land to maintain an action in ejectment.

**3. Same—Governing Statute.**

Statutes of limitations affect the remedy only, and are matters of procedure and not of substantive rights and the limitation prescribed by the statute in force when the action was commenced controls in each case.

**4. Judgment Sustained.**

Evidence examined, and the same fully sustains the judgment entered in this cause.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Seminole County; J. W. Bolen, Judge.

John W. Wilmott and R. J. Roberts, for plaintiff in error.

Davis & Patterson, for defendant in error.

Opinion by RUTH, C. This was an action in ejectment and for rents, brought by the defendant in error, plaintiff below, against the plaintiffs in error, defendants below, and for convenience the parties will be herein designated as they appeared in the trial court.

Plaintiff in his amended petition alleges Dinah Ishmael was a Seminole freedman opposite roll No. 2621, and was allotted as a part of her distributive share of the lands of the Seminole tribe the following lands in Seminole county, Okla., to wit: N. W. ¼ of the S. W.¼, sec. 12, T. 8 N., R. 7 E. That on July 3, 1906, she conveyed same to R. L. Thurmond and Sam Pack. That on July 17, 1906, Sam Pack conveyed his interest in the land to R. L. Thurmond. That on May 29, 1907, R. L. Thurmond conveyed a one-third interest in the lands to

J. E. Davidson. On May 8, 1907, R. L. Thurmond conveyed a two-thirds interest in said land to W. S. Baker and P. W. Baker. That on Nov. 8, 1917, J. E. Davidson, W. S. Baker, and P. W. Baker conveyed the lands to the plaintiff, C. D. Keith.

Plaintiff further alleges that on March 23, 1907, Dinah Ishmael conveyed to N. A. White the N. W. ¼ of the S. W. ¼, sec. 12, T. 8 N., R. 7 E., and S. E. ¼ of the S. E. ¼, sec 11, T. 8. N., R. 7 E. That N. A. White, on April 4, 1907, by quitclaim deed conveyed the last-named tract to John Silas, and on April 16, 1907, John Silas conveyed said land to E. E. Jayne, and on May 4, 1907, E. E. Jayne by quitclaim deed conveyed to said R. L. Thurmond the N. W ¼ of the S. W. ¼, sec. 12, T. 8 N. R. 7 E. Plaintiff further alleges Dinah Ishmael filed her cause in the United States District Court for the Western District of Indian Territory against N. W. White, John Silas, and Elmo E. Jayne seeking to cancel the deed from Dinah Ishmael to N. A. White; that said cause was **numbered 944** in the United States District Court; that the matter was referred to John W. Wilmott, master in chancery, **who made his report** to the court, and on Dec. 5, 1907, the United States District Court sitting at Wewoka adjudged Dinah Ishmael's complaint should be dismissed, and that the deed to N. A. Clark was a good and valid deed, and conveyed a fee simple title to S. E. ¼ of the S. E. ¼, sec. 11, twp. 8 N., R. 7 E., to N. A. White; that the judgment was never appealed from, and the title to the land is fully and finally and completely adjudicated; that by reason of the above claims of title the plaintiff is the owner of the N. W. ¼ of the S. W. ¼, sec. 12, twp. 8 N., R. 7 E., and is entitled to the immediate possession thereof; that John Clark is unlawfully in possession of the lands, and so withholds possession from the plaintiff; that Clark has been in possession of the lands for the years 1917, 1918, 1919, and 1920; that he has appropriated the rents and profits for the said years; that they are reasonably worth $150 per year, and plaintiff prays judgment for title and possession of the lands, and for the sum of $600 for rents, etc.

John Clark for answer filed a general denial and for further answer says that he is holding as tenant under Dinah Ishmael, who is the owner of the land; that the deed from Baker and Davidson is champertous; that for the past ten years Dinah Ishmael has been in exclusive possession of the land and taken the rents and profits; that Thurmond, Baker, Davidson, nor plaintiff have ever been in possession of the land; that

by reason of Dinah Ishmael's possession of the land for more than seven years the statute of limitations has run against the plaintiff's claim.

Dinah Ishmael for her answer adopts the plea of champerty and the statute of limitations set up in the answer of John Clark, and for her cross-petition admits the deed to Thurmond and Pack on July 3, 1906; that she only received a small portion of the consideration agreed to be paid by them; that there is at least $600 balance due her; that she has been in open and notorious possession of the land for the past 15 years and has an equitable lien upon the land for the balance of the unpaid purchase price, and should not be ejected from the land until her equitable lien is satisfied, and that the deed to N. A. White is a forgery.

Upon the issues so joined the cause was tried to a jury, and a verdict returned for plaintiff for possession of the land, upon which verdict judgment was entered, and after motion for a new trial was overruled this cause was brought here for review upon petition in error and case-made.

As the question of the validity of the deed of March 23, 1907, from Dinah Ishmael to N. A. White was finally and definitely adjudicated in case No. 944, United States District Court for the Western District of Indian Territory in favor of White, and as the validity of the deed from Dinah Ishmael to Thurmond and Pack bearing date of July 3, 1906, is admitted by defendants, there remains to be determined the question of the vendor's lien of Dinah Ishmael and the statute of limitations.

The evidence discloses that plaintiff purchased the land November 8; 1917, that Clark was farming the land at that time, and plaintiff informed Clark of his purchase in 1917 and demanded possession, and Clark refused to surrender possession; that plaintiff did not talk to Dinah Ishmael, never saw Baker or Davidson until he purchased the land, and did not know who was receiving the rents and profits, and relied entirely upon the abstract of title delivered to him. The evidence further shows the land was "raw," "wild and unbroken land" not in cultivation, unfenced, and "lying out as a part of the public domain." Bob Davis, brother of Dinah Ishmael, was cutting timber on the land and was present in 1906 when Thurmond bought it, and Davis was told to stop cutting timber after the deed to Thurmond passed. Nothing appears to have been done to the land, no one lived there or attempted to farm it until 1914 or 1916 when Bob Davis attempted to lease

it to "Old Man Henderson," who fenced the place, and after the death of Henderson, the land was leased to John Clark in 1916 or 1917 by August Bruner, who testifies he was the agent of Dinah Ishmael. It further appears that Dinah Ishmael never paid any taxes on the place, Bob Davis claims to have held possession of the place for his sister, Dinah, after she sold the land to Thurmond, and to have cut timber therefrom after he was told not to do so, and though he did so cut timber he was a mere trespasser, as he knew the title had passed from Dinah, as he, Bob Davis, was present when the sale and conveyance was consummated. Section 183, Comp. Stat. 1921, provides in part as follows:

"Action for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter."

The first subdivision relates to real property sold on execution. The second to lands sold by an executor, administrator, or guardian by order of the court. The third to lands sold for taxes, and the fourth provides:

"An action for the recovery of real property not hereinbefore provided for within fifteen years."

The interest sought to be preserved by the statute manifestly does not fall within any of the first three subdivisions of the statute and must fall within the fourth subdivision, and is governed by the 15 years limitation.

Defendants suggest that the limitation of the right to bring this action is governed by section 4471, chap. 97, Mansfieeld's Digest of the Statutes of Arkansas, which provides as follows:

"No person or persons, or their heirs, shall have, sue or maintain any action or suit either at law or equity for any lands, tenements but within seven years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued; and all suits, either at law or in equity, for the recovery of any lands, tenements or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed."

With this contention of the defendant we cannot agree in view of the record in this case. The validity of the deed from Dinah Ishmael to Thurmond is admitted, and Thurmond assumed control and took possession of the land immediately upon the execution of the deed, and directed Bob Davis, brother of the grantor, to cease cutting timber on the land, and it was not until 1914 or 1916, being six or eight years after the territory was erected into a state, that Bob Davis attempted to lease the land, which was all this time wild, raw, unbroken, and unfenced land lying out in the public domain, to "Old Man Henderson," and if any adverse possession was claimed by defendant it was not until after statehood, and her right to the defense of limitations would be governed by the state statute, and furthermore, the remedy is sought within the state courts.

"As a general rule, since statutes of limitation affect the remedy only, an action on contract is governed by the statutes of limitation of the forum, and not by the lex loci contractus, nor the lex domicilii." Shaw v. Dickinson, 65 Okla. 186, 164 Pac. 1150; Gaier & Stroh Millinery Co. v. Hilliker, 52 Okla. 74, 152 Pac. 410.

"Where an action for damages for breach of contract was commenced March 29, 1910, in the district court of Garvin county, Okla., upon a cause of action arising in Indian Territory, April, 1907, prior to statehood, the limitation for bringing such actions under the statute then in force in the Indian Territory being three years; and under the statute extended over the state of Oklahoma upon the advent of statehood, the time for commencing such actions was limited to two years, it was held that the statutes of limitation are matters of procedure and not of substantive right, and that the limitation prescribed in the statute in force when the cause of action arose controls in each case, and that this action was barred by the running of the two-year limitation." Anderson v. Kennedy (Okla.) 152 Pac. 123.

The remaining ground upon which defendants stand is the claims of a vendor's lien by Dinah Ishmael in the sum of $600 for the balance of the purchase price, but under the facts in this case there is no merit in the contention.

The consideration named in the deed from Dinah Ishmael to Thurmond and Pack is $250, and the evidence discloses that Dinah wanted a house built upon some of her land. Her brother, Bob Davis, was going to build her a log house, but when Thurmond bought the land Thurmond furnished her the lumber with which to build a better house. Dinah Ishmael, on her own behalf testified, in substance, that Thurmond bought the land and told her brother, Bob Davis, not to cut any more timber, that she went to town and signed the Thurmond deed, and she told Thurmond she would rather have a house than the money and Thurmond furnished her the lumber to build the house, that she knew she sold to Thur-

mond and never made any claim to that land; that no one claimed it for about eight years thereafter, that the house was the consideration for the deed for the 40 acres, that Bob Thurmond does not owe her any money, that she was satisfied with the deal (Thurmonds) and said so in her petition in cause No. 944 in the United States district court when she sued the "one arm fellow" (N. A .White) to cancel his deed. Bob Davis testified that he thought about $600 was still due Dinah.

The deed recites a consideration of $250 and there is a total lack of material, competent testimony to support the claim of a vendor's lien. If the defendant ever had a vendor's lien, would the same be enforceable as against the plaintiff?

The deed of July 3, 1906, from Ishmael to Thurmond is admitted to be a valid deed, no reservation of a lien appears therein, nor does the record disclose any attempt to assert a lien and for this reason Davidson and Baker, who acquired title from Thurmond, were innocent purchasers.

In Robinson v. Owen (Tenn.) 52 S. W. 870, it is held:

"A vendor who conveys real estate without reserving a specific lien may enforce his equity as against his vendee and mere volunteers at any time before their conveyance of the property, but not as against purchasers from, and creditors of the vendee where he has delayed filing his bill until they have acquired rights in such property."

The court further said:

"It is not a lien until a bill has been filed to assert it. Before that is done it is a mere equity or capacity to acquire a lien and have a satisfaction of it. If this floating equity misnamed in judicial parlance, 'the vendor's lien,' be not quite a myth but a mere capacity in the vendor to acquire a lien if he chooses, then this same capacity belongs to others who are creditors and have rights just as meritorious as his. And we hold that simple knowledge on the part of the creditors, that the vendor is sleeping from year to year upon his rights, and may, if he chooses, acquire a lien, as the creditor himself is about to do, cannot even in the form of conscience impair the value acquired by the creditor. In such case there is no mala fides."

After Davidson and Baker acquired title to this land, Dinah Ishmael filed her action in the United States district court to vacate and annul a deed to this and other lands purported to have been executed by her conveying title to N. A. White, and in her petition she specifically states she conveyed

the land now in controversy to Thurmond and asserts no lien upon the same and treats, in that action, Thurmond and his vendees as absolute owners of this 40 acre tract. Davidson and Baker retained title until 1917 when they conveyed to plaintiff and took the property without notice that the same was impressed with a lien.

In Craggs v. Earls, 8 Okla. 462, 58 Pac. 637, this court said:

"The lien of a vendor for the unpaid purchase money is subject to the rights of purchasers and incumbrancers in good faith without notice."

"An innocent purchaser of real estate for value is protected against outstanding equities and secret trusts." Doye v. Carey, 3 Okla. 627, 41 Pac. 432.

Upon consideration of the whole record and in view of the principles announced by this court, we find no error in the judgment entered, and the judgment of the lower court, for the reasons herein stated, should be affirmed.

By the Court: It is so ordered.